**SIGNED THIS: March 26, 2007**

_____
GERALD D. FINES
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

IN RE:                                              )
                                                    )
GEORGE M. PIASECKI,                                 )  Bankruptcy Case No. 06-90643
                                                    )
            Debtor.                                 )

OPINION

This matter having come before the Court on a Trustee's Motion for Reimbursement for Expenses Incurred by Trustee Pursuant to §330(B) and a Motion for Relief from Stay filed by secured creditor, First Midwest Bank; the Court, having reviewed written memoranda of the parties, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

The material facts in this matter are not seriously in dispute, and are, in pertinent part, as follows:

1. The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on June 29, 2006.

2. Among the Debtor's assets was residential real estate located at 1714 North Logan Avenue, Danville, Illinois, listed in Debtor's schedules as having a value of $550,000, with a mortgage debt owed to First Midwest Bank of approximately $560,000.

3. In conjunction with her investigation of the assets and liabilities of the Debtor, the Trustee discovered that the residential real estate located at 1714 North Logan Avenue, Danville, Illinois, was listed for sale with a real estate broker, having a listed sale's price of $619,900. Additionally, the Trustee discovered an appraisal that had been conducted on behalf of First Midwest Bank, dated in 2002, appraising the subject real estate in the sum of $624,500. Given these values, the Trustee determined that it would be in the best interest of Debtor's unsecured creditors to attempt to sell the real estate as an asset of the Debtor's bankruptcy estate.

4. During her investigation, the Trustee discovered that, prior to filing for bankruptcy relief, the Debtor had deeded the subject real estate to his spouse. As a result, the Trustee filed an adversary complaint (Case No. 06-9064), in which she sought to avoid the transfer of the real estate from the Debtor to his spouse only and to seek authority to sell the real estate. The Trustee's adversary complaint was immediately settled, with the Debtor and his spouse conveying title to the real estate to the Trustee, thus limiting any interest that the Debtor or the spouse had in the real estate, including any homestead exemption claim by the Debtor or his spouse. The elimination of the homestead exemption claim resulted in the possibility that even more money could be recovered on behalf of unsecured creditors.

5. On January 9, 2007, this Court entered an order resolving Trustee's adversary complaint against the Debtors, and the real estate was conveyed to the Trustee by deed from the Debtor and his spouse. Said deed was recorded in the Office of the Vermilion County Recorder on January 11, 2007.

6.     Due to the fact that the Debtor and his spouse vacated the subject real estate in the middle of the Winter, the Trustee had the utilities turned on in her name. In addition, the Trustee procured insurance on the subject real estate pending a sale. The facts adduced at hearing in this matter, on March 6, 2007, indicate that the Trustee communicated with First Midwest Bank concerning the need for insurance on the subject real estate, but never received a response from First Midwest Bank as to whether or not the Bank carried insurance. As a result, the Trustee procured insurance on the real estate and paid the initial premium from her own pocket.

7.     Subsequent to taking title to the subject real estate, the Trustee has determined that she will be unable to sell the real estate for an amount great enough to benefit the unsecured creditors. First Midwest Bank also shares this belief and has filed a Motion for Relief from Stay requesting that the Trustee abandon her interest in the subject real estate and that the automatic stay be lifted so that the Bank can proceed to foreclosure.

8.     Pursuant to 11 U.S.C. § 330(a)(1)(B) and 11 U.S.C. § 506(c), the Trustee seeks to be reimbursed by First Midwest Bank for reasonable and necessary expenses expended by the Trustee between January 9, 2007, when she took possession of the subject real estate, and March 6, 2007, the date when this matter was heard. The Trustee seeks reimbursement for a title search to verify what liens were against the real estate from Allied Title in the amount of $123; filing of the deed in the Recorder's Office in the amount of $40; insurance procured from HRH Insurance in the amount of $2,317; certified mail expenses to send payments to HRH Insurance in the amount of $4.88; Ameren IP utility services for January 15, 2007, in the amount of $209.26; Ameren IP utility service for February 12, 2007, in the amount of $469.17; and estimated expense to Ameren IP through March 6, 2007, in the amount of $510; for a total reimbursement in the amount of $3,962.31. First Midwest Bank opposes the Trustee's request for reimbursement arguing that there was never any equity in

the real estate for the benefit of unsecured creditors, and, as such, the expenses which the Trustee seeks to be reimbursed for were unnecessary and unreasonable.

Conclusions of Law

Pursuant to 11 U.S.C. § 506(c):

> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

In order for the secured creditor to be charged with costs and expenses sought by the Trustee, the Trustee must prove three elements by a preponderance of the evidence: (1) the costs and expenses must be reasonable, (2) the costs and expenses must be necessary in preserving or disposing of collateral, and (3) a secured creditor must benefit from such costs and expenses. See: In re Evanston Beauty Supply, Inc., 136 B.R. 171 (Bankr. N.D. Ill. 1992); In re TRIM-X, Inc., 695 F.2d 296 (7th Cir. 1982). The relative values of the property and the amount of secured claim are not relevant considerations under 11 U.S.C. § 506(c). See: TRIM-X, Inc., supra at 298.

Given the undisputed facts in this matter, the Court finds that the Trustee has clearly shown the necessary three elements as to the Ameren IP expenses for utilities and the cost for insurance on the subject real estate. The utility service was clearly necessary to preserve and protect the subject real estate during the Winter months, and the insurance was necessary to protect the real estate from potential loss. The Bank argues that it had insurance on the subject real estate, and, thus, the Trustee was unreasonable in obtaining her own insurance. However, the facts clearly reveal that the Bank failed to communicate the fact that it had insurance to the Trustee, and, thus, the Trustee had no choice but to obtain her own insurance. As for the expenses of title search and recording of the deed from the Debtors to the Trustee, the Court concludes that those expenses were not beneficial to the secured creditor, and, thus, are not allowable.

In sum, the Court finds that the Trustee is entitled to reimbursement from First Midwest Bank for utility services in the amount of $1,188.43, and insurance costs in the amount of $2,321.88, for a total reimbursement of $3,510.31.

In considering the Motion for Relief from Stay filed by creditor, First Midwest Bank, the Court finds that the undisputed facts reveal at this time that there is insufficient equity to benefit the unsecured creditors of the Debtor. As such, the automatic stay should be lifted on the subject real estate, and the Trustee should be directed to abandon her interest in the real estate by executing a quit claim deed in favor of secured creditor, First Midwest Bank.

###